UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LENA NICOLE H.,

                              Plaintiff,

v.                                                              1:23-cv-0826 (MAD/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

OLINSKY LAW GROUP                          HOWARD D. OLINSKY, ESQ.
250 S. Clinton St., Ste. 210
Syracuse, NY 13202
Counsel for Plaintiff

SOCIAL SECURITY ADMINISTRATION        JASON P. PECK, ESQ.
OFFICE OF THE GENERAL COUNSEL
6401 Security Blvd.
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION

      Lena Nicole H. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Dkt. No. 1. Plaintiff did not consent to the jurisdiction of a Magistrate Judge. Dkt. No. 4. The matter was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure 12(c), in

accordance with General Order 18. Dkt. Nos. 8, 9. Plaintiff filed a reply. Dkt. No. 10. For the reasons discussed below, the Court recommends Plaintiff's motion for judgment on the pleadings be granted and Defendant's motion for judgment on the pleadings be denied.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born in 1994, has a high school education, and lives with her parents. Administrative Transcript at 48.[1] On February 14, 2019, Plaintiff protectively filed for DIB and SSI alleging disability beginning March 20, 2013, due to a learning disability, Asperger's syndrome, depression, attention deficit hyperactivity disorder ("ADHD"), alcohol use disorder, and fetal alcohol syndrome. *Id*. at 18, 107, 503-19, 597. Her applications were initially denied on June 14, 2019, and denied again after reconsideration on January 2, 2020. *Id*. at 221-28, 243-65. On September 15, 2021, Plaintiff appeared before Administrative Law Judge ("ALJ") Jude B. Mulvey. *Id*. at 40-101. On September 22, 2021, the ALJ issued a written decision finding Plaintiff disabled under the Social Security Act (the "Act"). *Id*. at 202-09.

On December 13, 2021, the Appeals Council remanded the case due to an error of law and for further consideration of Plaintiff's alcohol use disorder. *Id*. at 212-18. On June 17, 2022, ALJ Mulvey conducted a second hearing. *Id*. 102-43. Plaintiff, her mother, and a vocational expert ("VE") testified. *Id*. On September 30, 2022, the ALJ issued a written decision finding Plaintiff not disabled under the Act. *Id*. at 12-31. The Appeals Council denied Plaintiff's request for review on May 22, 2023, making the ALJ's decision the final decision of

---

[1] The Administrative Transcript is found at Dkt. No. 7. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Citations to the parties' submissions will use page numbers assigned by CM/ECF, the Court's electronic filing system.

the Commissioner. *Id*. at 1-6. Plaintiff timely commenced this action on July 10, 2023, challenging the Commissioner's decision. Dkt. No. 1.

## II. LEGAL STANDARDS

### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). Therefore, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). Further, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004) (citation omitted); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996). Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of

witness testimony, or explain his or her reasonings. *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); *Pratts*, 94 F.3d at 39.

### B. Standard to Determine Disability[2]

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Act. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working. *Id*.

---

[2] While the SSS program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

However, "[w]here there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012). The regulations require the ALJ to go beyond the five-step sequential analysis and consider whether the claimant would still be disabled in the absence of the addiction. *See* 20 C.F.R. §§ 404.1535(a), 416.935(a). In making that determination, the ALJ is required to evaluate which of the claimant's physical and mental limitations upon which the disability determination was made would remain if the claimant stopped using drugs or alcohol and then determine whether any or all of the remaining limitations would be disabling. *See id*. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ concludes the claimant's remaining limitations would not be disabling, a finding will be made that the drug addiction or alcoholism was a contributing factor material to the determination of disability. *See id.* §§. 404.1535(b)(2)(i), 416.935(b)(2)(i). Conversely, if the ALJ concludes the claimant's remaining limitations are disabling, a finding will be made that the claimant was disabled independent of the drug addiction or alcoholism and that the same was not a contributing factor material to the determination of disability. *See id*. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

### III.     THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. T. 18-31. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 20, 2013, the alleged onset date. *Id*. at 18. Proceeding to step two, the ALJ found Plaintiff has the following severe impairments: autism spectrum disorder, major depressive disorder, a generalized anxiety disorder, an impulse control/conduct disorder, ADHD, and a substance abuse disorder. *Id*. at 19. At step three, the ALJ found she did not have an impairment or combination of impairments that met or medically

equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 19. Next, the ALJ determined based on all of the impairments, including the substance use disorder, Plaintiff has the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform simple, routine, repetitive tasks in a work environment free of fast paced production requirements, with few if any workplace changes, and involving low level of work pressure (which is defined as not requiring multitasking, detailed job tasks, a production rate pace, or the sharing of job tasks). She can tolerate work involving no more than occasional interaction with the public and simple, short interactions with coworkers and supervisors and where she would work in proximity with others, but the tasks performed should not require working in conjunction with others and the work should involve objects, rather than people. She can perform work that does not involve arithmetic. The claimant's deficits in reasoning and judgment and increased impulsivity with alcohol and substance abuse would result in her being off task more than ten percent (10%) of the workday and unable to consistently sustain an ordinary routine and attendance.

*Id*. at 22. At step four, the ALJ noted Plaintiff has no past relevant work. *Id*. at 26. Finally, at step five, considering Plaintiff's age, education, work experience and RFC based on all impairments, including the substance use disorder, the ALJ relied on the VE's testimony in determining Plaintiff could not make a successful adjustment to work that existed in significant numbers in the national economy. *Id*. at 26-27. Accordingly, the ALJ concluded Plaintiff was disabled. *Id*. at 27.

Having concluded the five-step sequential evaluation, the ALJ undertook the analysis required by 20 C.F.R. §§ 404.1535 and 416.935. *Id*. First, the ALJ found if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities. *Id*. Plaintiff would therefore still have a severe impairment or combinations of impairments. *Id*. At step two, the ALJ determined if Plaintiff

7

stopped the substance use, she would not have an impairment or combination of impairments that meets or medially equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ then found if Plaintiff stopped the substance use, she has the RFC to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform simple, routine, repetitive tasks in a work environment free of fast paced production requirements, with few if any workplace changes, and involving low level of work pressure (which is defined as not requiring multitasking, detailed job tasks, a production rate pace, or the sharing of job tasks).  She can tolerate work involving no more than occasional interaction with the public and simple, short interactions with coworkers and supervisors and where she would work in proximity with others, but the tasks performed should not require working in conjunction with others and the work should involve objects, rather than people.  She can perform work that does not involve arithmetic.

*Id*. at 28.  At step four, the ALJ again noted Plaintiff has no past relevant work. *Id*. at 30.  At step five, relying on the VE's testimony, the ALJ concluded if Plaintiff stopped the substance use, and considering her vocational factors, Plaintiff would be capable of making a successful adjustment to work that exists in significant numbers in the national economy that she could perform. *Id*. at 30-31.  The ALJ therefore determined Plaintiff's substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance use. *Id*. at 31.  Accordingly, the ALJ found Plaintiff has not been disabled within the meaning of the Act at any time from the alleged onset date through the date of decision. *Id*.

## IV.    THE PARTIES' CONTENTIONS

Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because he failed to properly evaluate the opinion evidence. *See generally* Dkt. Nos. 8, 10. Specifically, Plaintiff challenges the ALJ's conclusion that her substance use disorder was

material to the finding of disability. Dkt. No. 8 at 11. Plaintiff argues this "conclusion was contradicted by the treating and examining opinion evidence. Had the ALJ properly evaluated the opinion evidence, he would have concluded that Plaintiff's substance use was immaterial to the issue of whether she was disabled." *Id*.; *see id*. at 11-16; *see also* Dkt. No. 10 at 1-3.

In response, the Commissioner contends the ALJ provided an appropriate and reasonable narrative discussion regarding why substance use was a contributing material factor to Plaintiff's disability. *See generally*, Dkt. No. 6. Defendant also argues substantial evidence supports the ALJ's decision to omit the off-task and absentee limitations in the RFC that did not consider Plaintiff's substance use. *Id*. at 7-10.

V. **THE COURT'S ANALYSIS**

For the reasons set forth below, the Court finds substantial evidence does not support the ALJ's assessment of the medical opinion evidence of record and subsequent materiality determination that if Plaintiff stopped the substance use, she would be capable of making a successful adjustment to work that exists in the national economy. Accordingly, remand is warranted so the ALJ may properly assess the medical evidence of record, and develop the record as necessary, in order to reach a disability determination supported by substantial evidence.

A. **Evaluation of Medical Opinion Evidence**

For claims filed on or after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ will evaluate the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability,

9

(2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See id*. §§ 404.1520c(c), 416.920c(c). Of those, the "factors of supportability . . . and consistency . . . are the most important factors." *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

### B. Medical Opinion Evidence

#### 1. Tobi Ann Dorn, Psy.D.

On August 10, 2018, Plaintiff's treating provider, Tobi Ann Dorn, Psy.D., completed a mental RFC assessment in which she opined Plaintiff has: (1) no significant limitations in the ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, and travel in unfamiliar places or use public transportation; (2) moderate limitations in the ability to understand and remember detailed instructions, work in coordination with or proximity to others without being

distracted by them, appropriately interact with the general public, ask simple questions or request assistance, respond appropriately to changes in the work setting, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, set realistic goals or make plans independently of others, and be aware of normal hazards and take appropriate precautions; (3) moderate to marked limitations in the ability to carry out detailed instructions, maintain attention and concentrations for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances; and (4) marked limitations in the ability to sustain ordinary routine without special supervision, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. T. 857-58.

Dr. Dorn explained Plaintiff's overall cognitive ability was in the borderline to below average range. *Id*. at 859. She reported Plaintiff has struggled with depression and learning challenges since 2007 and fell into the below average range in self-direction, socialization and communication, self-care, and academics. *Id*. Dr. Dorn explained Plaintiff had been unable to maintain employment in part due to errors in judgement, and inappropriate use of unstructured work time. *Id*.

The ALJ found Dr. Dorn's opinion persuasive when considering the substance use disorder and less persuasive if Plaintiff stopped the substance use. *Id*. at 24, 30.

### 2. Beth Halburian, Psy.D.

Consultative examiner Beth Halburian, Psy.D., examined Plaintiff on April 23, 2019. *Id*. at 840-43. Plaintiff reported mood instability, increased frustration, social withdrawal, excessive worrying, impulsivity, and distractibility. *Id*. at 840-41. She can dress, bathe, and groom herself. *Id*. at 840. She can cook, clean, do laundry, and shop independently. *Id*. She has difficulty managing money due to trouble with math, as well as impulsive spending and she does not understand the concept of money. *Id*. She has been arrested for DWI and grand larceny. *Id*. Plaintiff reported she will binge drink due to difficulties with impulse control. *Id*. On April 5, 2019, she was brought to the emergency room by police due to drinking; however, she was not admitted at that time. *Id*. at 840.

Dr. Halburian reported Plaintiff presented as cooperative with an adequate manner of relating. *Id*. at 841. Her eye contact was appropriate, speech was fluent and clear, and mood was euthymic. *Id*. She displayed a coherent and goal directed thought process and was oriented in all spheres with a clear sensorium. *Id*. at 841-42. Her attention, concentration, and memory skills appeared mildly impaired due to anxiety or nervousness in the evaluation and her cognitive functioning appeared average. *Id*. at 842. Her general fund of information was somewhat limited. *Id*. Plaintiff's insight and judgment were poor. *Id*.

Dr. Halburian opined Plaintiff has: (1) no limitations understanding, remembering, or applying simple directions and instructions; (2) mild limitations understanding, remembering, or applying complex directions and instructions; (3) moderate limitations regulating emotions, controlling behavior, maintaining well-being, and taking appropriate precautions; (4) moderate to marked limitations interacting adequately with supervisors, coworkers, and the public, and sustaining concentration and performing a task at a consistent pace; and (5) marked limitations

using reason and judgment to make work-related decisions, and sustaining an ordinary routine and regular attendance at work. *Id*. Dr. Halburian reported Plaintiff's "[d]ifficulties at this are caused by cognitive deficits and psychiatric symptoms." *Id*.

She indicated the "[r]esults of the examination appear to be consistent with psychiatric, substance abuse and cognitive problems, and this may significantly interfere with the claimant's ability to function on a daily basis." *Id*. Dr. Halburian recommended individual psychological therapy, psychiatric intervention, and vocational training. *Id*. She expected Plaintiff's impairments and the time frame suggested for therapy to last more than two years. *Id*. Dr. Halburian opined Plaintiff's prognosis was guarded and she would not be able to manage her own funds due to impulsive spending. *Id*.

The ALJ found Dr. Halburian's opinion persuasive when considering the substance use disorder and less persuasive if Plaintiff stopped the substance use. *Id*. at 25, 30.

### 3. S. Hennessey, Ph.D.

On December 30, 2019, state agency psychological consultant S. Hennessey, Ph.D., reviewed the available evidence of record and determined Plaintiff experienced no more than moderate limitations in any area of mental functioning. *Id*. at 178, 192. Dr. Hennessey opined Plaintiff was able to (1) understand simple instructions and work-like procedures, (2) complete simple tasks on a sustained basis, (3) relate and respond in an appropriate manner without substantial limitations, and (4) adapt to changes in a simple task setting and use appropriate judgment to make effective work-related decisions. *Id*. at 183, 197.

The ALJ found Dr. Hennessey's opinion partially persuasive when considering the substance use disorder and partially persuasive if Plaintiff stopped the substance use. *Id*. at 25, 30.

### C. Materiality of Substance Abuse Disorder

A claimant cannot qualify for social security benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). "The 'key factor' in determining whether alcoholism or drug addiction is [a] contributing factor material to the determination of disability is whether the claimant would still meet the definition of disabled under the Act if [s]he stopped using alcohol or drugs." *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 272 (W.D.N.Y. 2005); *see also Smith v. Comm'r of Soc. Sec.*, 731 F. App'x 28, 30 (2d Cir. 2018) ("Drug addiction is a material factor if the individual would not be found disabled if she stopped using drugs."); *Cage*, 692 F.3d at 123 ("The critical question is 'whether [the SSA] would still find [the claimant] disabled if [she] stopped using drugs or alcohol.'" (quoting 20 C.F.R. § 416.935(b)(1))). "If the remaining limitations would still be disabling to the claimant on their own, then the claimant is entitled to . . . benefits. If the remaining limitations would not be disabling on their own, then the alcohol or substance abuse is considered material; and the claimant would not be eligible for benefits." *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 181 (E.D.N.Y. 2011) (citations omitted). The claimant bears the burden of proving her substance use disorder is not a contributing factor material to the disability determination. *See Cage*, 692 F.3d at 123-24.

In formulating Plaintiff's RFC based on all of the impairments, including the substance use disorder, the ALJ explained "[i]n consideration of the effects of the claimant's mental health conditions, she was restricted to simple, routine, repetitive, tasks that do not involve arithmetic in a nonproduction-based setting involving limited work pressure and interaction with others. Further, as a result of the effects of her ongoing substance abuse on her insight and judgment, it

was determined she would be off task more than 10 percent (10%) of the workday and an inability to sustain a normal routine and regular attendance." *Id*. at 24.

Notably, Dr. Dorn opined Plaintiff experienced marked limitations in her ability to sustain a normal routine, complete a normal workday without psychological interruptions, accept instructions and respond appropriately to criticism form supervisors, and get along with coworkers without distracting them. *Id*. at 857-58. Similarly, Dr. Halburian found Plaintiff experienced marked limitations in her ability to use reason and judgment to make work-related decisions and sustain an ordinary routine and regular attendance at work. *Id*. at 842-43. As set forth above, in making this RFC determination, the ALJ found the opinions of Dr. Dorn and Dr. Halburian persuasive. *Id.* at 24-26.

However, the ALJ stated, "without consideration of the effects of her substance abuse, the claimant does not experience the deficits in insight and judgment that would so significantly affect her ability to remain on task and follow a schedule." *Id*. at 29. Therefore, the ALJ eliminated the following from the RFC if Plaintiff stopped the substance use:

> The claimant's deficits in reasoning and judgment and increased impulsivity with alcohol and substance abuse would result in her being off task more than ten percent (10%) of the workday and unable to consistently sustain an ordinary routine and attendance.

*Compare id*. at 28 *with id*. at 26.

Here, Plaintiff argues, and this Court agrees, the ALJ did not sufficiently explain his RFC determination if Plaintiff stopped the substance use. *See generally*, Dkt. Nos. 8, 10. As discussed above, "[t]he revised regulations for evaluating opinion evidence place substantial emphasis on both supportability and consistency and require the ALJ to explain the analysis of each of those factors." *Keli Ann D. v. Comm'r of Soc. Sec.*, No. 1:23-CV-765 (DJS), 2024 WL 3493274, at *5 (N.D.N.Y. July 22, 2024) (citations omitted). However, an ALJ's failure to

15

explain the supportability and consistency factors when assessing the persuasiveness of a medical opinion does not automatically warrant remand. *Wanda N. v. Comm'r of Soc. Sec.*, No. 6:21-cv-00358 (TJM), 2022 WL 4376484, at *7 (N.D.N.Y. Sept. 22, 2022). If the ALJ's "consideration of the relevant factors can be gleaned from the ALJ's decision as a whole," remand is not necessary. *John L. M. v. Kijakazi*, No. 5:21-cv-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022).

In determining Plaintiff's RFC if she stopped the substance use, the ALJ found the opinions of Dr. Dorn and Dr. Halburian less persuasive. T. 30. Pursuant to the regulations, the ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

As Defendant points out, the ALJ reasoned that "[s]ince her commitment to substance abuse treatment in early 2020, while the claimant has continued to experience symptoms relating to her other mental health conditions, her mental status examinations of record, especially her insight and judgment have significantly improved." Dkt. No. 9 at 8; T. 30. Although the Court finds this explanation sufficiently addresses the consistency factor, the ALJ does not address the supportability factor and "the Court cannot 'adequately "glean" how the ALJ weighed the . . . supportability factor'" if Plaintiff stopped the substance use. *Tyler W. v. Comm'r of Soc. Sec.*, No. 3:22-CV-01345 (CFH), 2024 WL 1075209, at *8 (N.D.N.Y. Mar. 12, 2024) (alteration in original) (citations omitted).

To that end, the supportability factor requires an ALJ to ask whether a medical source provided supporting explanations for his or her opinion. *See Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *14 (N.D.N.Y. June 27, 2023). Here, Dr. Halburian opined that while the results of the consultative examination appeared consistent with

psychiatric, substance abuse, and cognitive problems, Plaintiff's "[d]ifficulties at this time are caused by cognitive deficits and psychiatric symptoms." T. 842. Similarly, Dr. Dorn explained in her opinion that Plaintiff's limitations stemmed from her cognitive deficits, below average ABAS II scores, learning challenges, deficits in communication and self-care, immature social behaviors, and errors in judgment. *Id*. at 859. As Plaintiff points out, neither Dr. Dorn nor Dr. Halburian attributed any of Plaintiff's marked limitations to her substance use. Dkt. No. 8 at 12. The ALJ's failure to evaluate the supportability of these opinions if Plaintiff stopped the substance use is especially troubling because it appears both Dr. Dorn and Dr. Halburian found Plaintiff's mental impairments—rather than her substance use—caused marked limitations in her ability to stay on task and sustain a normal routine and attendance. This lack of explanation frustrates meaningful review of the ALJ's decision.[3] *See* SSR 13-2p, 2013 WL 621536, at *2.

---

[3] This Court "is mindful of Second Circuit precedent rejecting the argument that a materiality determination must be based on expert psychiatric opinion evidence, and finding that an ALJ's discussion of the limited treatment notes of record prepared during instances where a plaintiff 'did not have access to drugs or alcohol' constituted substantial evidence to support the ALJ's determination that plaintiff would not be disabled without substance abuse." *Jessica Marie S. v. O'Malley*, No. 5:23-CV-370 (DNH/MJK), 2024 WL 2880641, at *14 (N.D.N.Y. Apr. 19, 2024) (quoting *Cage*, 692 F.3d at 127), *report and recommendation adopted sub nom. Jessica S. v. Comm'r of Soc. Sec.*, 2024 WL 2291703 (N.D.N.Y. May 21, 2024); *see also* SSR13-2p, 2013 WL 621536, at *8 n.19 ("The finding about materiality is an opinion on an issue reserved to the Commissioner under 20 CFR 404.1527(e) and 416.927(e). Therefore, we will not ask a treating source, a CE provider, a medical expert, or any other source for an opinion about whether [substance abuse] is material."). Indeed, a finding of materiality can be made based on medical evidence during periods of sobriety demonstrating that the claimant would not otherwise be disabled absent the substance abuse. *Bradley F. v. Comm'r of Soc. Sec.*, No. 21-CV-0529, 2023 WL 6163432, at *8 (W.D.N.Y. Sept. 21, 2023) (collecting cases). Nevertheless, these cases do not suggest the ALJ's discretion in rendering materiality determinations otherwise supplants his duty to properly assess the medical opinion evidence pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c), nor does it permit the ALJ to unfoundedly reject opinion evidence of record that is directly relevant to the issue of materiality. *See, e.g.*, *Jessica Marie S.*, 2024 WL 2880641, at *14; *Miranda v. Comm'r of Soc. Sec.*, No. 22-CV-4358, 2024 WL 2053854, at *13 (E.D.N.Y. May 8, 2024).

Furthermore, the ALJ's decision makes clear that the inclusion of the "off task more than ten percent (10%) of the workday and unable to consistently sustain an ordinary routine and attendance" was material to Plaintiff's ability to perform jobs existing in significant numbers in the national economy. *See* T. 26, 28.

To be sure, "[o]nce the ALJ has reached a determination regarding materiality, as with all substantive findings in the ALJ's decision, the Court need only ensure that there was 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Liberti v. Comm'r of Soc. Sec.*, No. 6:18-CV-6384, 2019 WL 13219673, at *6 (W.D.N.Y. Oct. 29, 2019) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)).  That standard was not met here.

Accordingly, the Court recommends this matter be remanded for further proceedings. On remand, the ALJ should obtain additional medical opinion evidence as necessary, reassess the evidence of record in its entirety pursuant to the applicable regulations, and render a new decision.

## VI. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) be **GRANTED** and Defendant's motion for judgment on the pleadings (Dkt. No. 9) be **DENIED;** and it is further

**RECOMMENDED** that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July 30, 2024
       Syracuse, New York

*[signature]*
Therèse Wiley Dancks
United States Magistrate Judge